**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **WOODROW MILLER #1535217** | § | |
| | § | |
| **V.** | § | **A-10-CA-070-LY** |
| | § | |
| **RISSIE OWENS, LT. COL. LAMAR** | § | |
| **BECKWORTH, and RICK THALER** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

The Magistrate Court submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(f) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates Judges, as amended, effective December 1, 2002.

Before the Court are Plaintiff's Second Amended Complaint brought pursuant to 42 U.S.C. § 1983 (Document No. 27); Plaintiff's Motion for Partial Summary Judgment (Document No. 45); Plaintiff's Rule 7(a) Reply (Document No. 48); Defendants' Motion for Judgment on the Pleadings (Document No. 51); Plaintiff's Response to Defendants' Motion for Judgment on the Pleadings (Document No. 53); Plaintiff's Supplemental Motion for Partial Summary Judgment (Document No. 54); Defendants' Response to Plaintiff's Motion for Partial Summary Judgment (Document No. 57); Defendants' Motion for Summary Judgment (Document No. 60); Plaintiff's Motion for Order Granting Trial Amendment (Document No. 62); Plaintiff's Response to Defendants' Motion

for Summary Judgment (Document No. 63); Defendants' Amended Advisory to the Court (Document No. 78); Plaintiff's Response to Defendants' Advisory to the Court (Document No. 79); and Plaintiff's Motion for Partial Judgment on Defendants' Pleadings (Document No. 80). Plaintiff, proceeding pro se, has been granted leave to proceed in forma pauperis.[1]

## I. BACKGROUND

At the time he filed his original complaint, Plaintiff was an inmate incarcerated in the Garza East Unit of the Texas Department of Criminal Justice - Correctional Institutions Division ("TDCJ-CID"). Plaintiff was subsequently transferred to the Duncan Unit where he filed his Second Amended Complaint. Plaintiff files this action pursuant to 42 U.S.C. § 1983. He sues Rissie Owens, Chairperson of the Texas Board of Pardons and Paroles; Rick Thaler, Director of the TDCJ-CID; and Lt. Col. Lamar Beckworth, Deputy Director of the Texas Department of Public Safety.

Plaintiff was convicted in the 230th Judicial District Court of Harris County, Texas, of two counts of indecency with a child by contact. Plaintiff was initially sentenced to seven years community supervision on May 20, 2002. Plaintiff's community supervision was revoked, and he was sentenced to four years in prison on October 17, 2008. The state court judgment issued on October 17, 2008, specifically states, "Sex Offender Registration Requirements do not apply to the Defendant."[2] Plaintiff asserts the State is bound by the terms of the state court judgment. Plaintiff

---

[1] Plaintiff indicates he was licensed to practice law in May 1986 and practiced in Houston for many years until he was disbarred in October 2002.

[2] The copy of the Judgment Adjudicating Guilt maintained in the records of the TDCJ was altered with a handwritten notation to reflect the sex-offender registration requirements *do* apply. Neither TDCJ-CID nor DPS offered any evidence reflecting that this was a change made by the judge, and there is no reason to believe that it was. The official, certified copy of the Judgment issued by the trial court has the language noted in the text. It appears that this handwritten, un-initialed change was made by someone after the Judgment was entered.

asserts that, despite the terms of the judgment indicating sex-offender registration requirements do not apply, the defendants have informed him that he will be required to comply with sex-offender registration requirements upon his release to parole.

Plaintiff argues Condition X (sex-offender conditions) and Condition M (sex-offender registration) imposed by the Parole Board are precluded by the state court's judgment. He further contends the Parole Board should not be able to require him to undergo substance abuse treatment or urinalysis monitoring under Conditions S or 0.13. Plaintiff argues the imposition of such conditions violates his due-process rights, is an unlawful search and seizure, and constitutes cruel and unusual punishment. Plaintiff also complains the defendants failed to verify that Plaintiff elected to transfer to TDCJ-CID pursuant to 42.09 of the Texas Code of Criminal Procedure rather than remain in the Harris County Jail after filing his notice of appeal. Plaintiff further argues he should not be required to admit to the convicted labeled offense in a sex-offender program. Plaintiff believes his failure to admit will cause him to be unsuccessfully terminated from the program and preclude his release on parole. Plaintiff also raises several state-law claims. Specifically, he states Defendants are liable for "negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, false imprisonment, wrongful prosecution, and abrogation of a final judgment." Finally, Plaintiff asserts the trial court amended his indictment to say "cause contact" rather than "cause sexual contact." Plaintiff contends this recitation does not state a felony offense listed in the Texas Penal Code and he is being penalized for a non-penal code offense.

## II. EVIDENTIARY HEARING, DEFENDANTS' AMENDED ADVISORY TO THE COURT AND PLAINTIFF'S RESPONSE TO THE ADVISORY

Although it originally took a different position, the Texas Board of Pardons and Paroles has indicated it will now not impose sex-offender registration requirements upon Plaintiff when he is released on parole in June 2011. The Texas Department of Public Safety ("DPS"), however, has maintained its position that Plaintiff must register when he is released in June. Because DPS had never stated the legal or factual basis for this position, the Court scheduled a hearing for April 28, 2011, to address the issue. Unfortunately, Counsel for Defendants initially failed to appear at the hearing, and then when she did appear was unprepared to address the issue. The Court therefore ordered that she file an advisory by May 2, 2011, stating the DPS's position on this issue, and setting out the legal and factual basis for that position, all of which was to be supported by an affidavit of an official of DPS. Defendants filed that advisory on May 2, 2011, along with the affidavit of Michelle M. Galaviz, a Crime Records Service Attorney.

The advisory explains that the DPS takes the position that the order placing Plaintiff on deferred adjudication in 2002 for indecency with a child by contact triggered Plaintiff's duty to register as a sex offender for the rest of his life. DPS asserts that, as of today, Plaintiff's statutory duty to register has not expired, and that it may only be terminated pursuant to Subchapter I of Chapter 62 of the Texas Code of Criminal Procedure. Defendants argue, absent a motion for early termination in compliance with Article 62.404, anything interpreted as terminating Plaintiff's lifetime duty to register early, or anything explicitly stating Plaintiff's lifetime duty to register is terminated early, is a legal impossibility. Defendants contend any court proceeding after Plaintiff was placed on deferred adjudication is irrelevant unless the proceeding overturned the 2002 order

4

or pardoned Plaintiff based on subsequent proof of innocence. Defendants thus assert that the 2008 Judgment does not affect Plaintiff's duty to register, because the 2008 Judgment did not set aside the 2002 order nor pardon Plaintiff pursuant to Article 62.002, nor did the 2008 Judgment terminate Plaintiff's lifetime duty to register pursuant to Subchapter I.

Plaintiff responds that when guilt is adjudicated, the order adjudicating guilt sets aside the order deferring adjudication. He explains that by adjudicating guilt, the trial court supplants its previous order deferring adjudication of guilt and imposing community supervision. Plaintiff points out that the State failed to appeal the 2008 Judgment adjudicating guilt. He argues the State accepted his four-year sentence and cannot now challenge the exemption of sex-offender registration contained in the same judgment.

## III. DEFENDANTS' MOTIONS

Defendants have filed both a motion for a judgment on the pleadings and a summary judgment motion. Because the summary judgment motion essentially supplants the motion for judgment on the pleadings, that motion should be denied as moot.

In the summary judgment motion, Defendants argue Plaintiff failed to allege Defendants Thaler and Beckworth were personally involved in a constitutional deprivation. They also argue Defendant Owens is entitled to absolute immunity with regard to Plaintiff's claims brought against her for monetary damages, because parole board members have absolute immunity when deciding whether to grant, deny or revoke parole. Defendants also assert they are all entitled to qualified immunity. In addition, Defendants argue they are entitled to Eleventh Amendment immunity with respect to Plaintiff's claims brought against them in their official capacities for monetary damages.

Defendants also argue Plaintiff has failed to establish a violation of his Fifth Amendment right against self-incrimination. Defendants assert the Sex Offender Education Program ("SOEP") Plaintiff must complete does not compel prisoners to incriminate themselves in violation of the Constitution. They explain Plaintiff's conviction is final, and there is no further incrimination to be feared. In addition, they provide summary judgment evidence that the SOEP participants, unlike the Sex Offender Treatment Program ("SOTP") participants, are not required to admit their guilt or discuss their underlying sex offense conviction.

Defendants further argue that Plaintiff's required participation in the SOEP does not violate Plaintiff's due process rights. They maintain Plaintiff cannot be stigmatized by participation in the SOEP because Plaintiff is a convicted sex offender. Similarly, they argue requiring Plaintiff to successfully complete the SOEP prior to his release on parole is not an arbitrary, wrongful government action.

Defendants next argue Plaintiff's incarceration within TDCJ was not in conflict with the Texas Code of Criminal Procedure and his procedural due process rights were not violated by Defendants when he was transferred from the Harris County Jail to TDCJ.

With regard to the revocation of Plaintiff's driver's license Defendants contend Plaintiff is required to register as a sex offender. According to Defendants, notice was sent to Plaintiff informing him that he must register under the Sex Offender Registration Program (" SORP"). They admit Plaintiff's license was automatically revoked, because Plaintiff failed to register under the SORP due to his incarceration. Defendants contend Plaintiff will be allowed to clear the revoked status of his license and apply to renew his driver's license upon his release when he registers as a sex offender.

With respect to Plaintiff's state law claims Defendants argue Plaintiff's claims are without merit. First, they assert they have not commenced any criminal prosecution against Plaintiff, and therefore they cannot be held liable for wrongful prosecution. Second, they argue Plaintiff has failed to state a claim for false imprisonment, because Plaintiff's incarceration was within the authority of law as shown in the Judgment Adjudicating Guilt entered on October 17, 2008. Third, Defendants assert Plaintiff has not proven any elements of intentional infliction of emotional distress. Finally, Defendants note Plaintiff's negligence claims are barred by the Texas Tort Claims Act.

## IV. PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, MOTION FOR PARTIAL SUMMARY JUDGMENT, AND SUPPLEMENTAL MOTION FOR PARTIAL SUMMARY JUDGMENT

In his response and motions, Plaintiff reasserts his claims previously presented to the Court in his Second Amended Complaint. Additionally, he specifically responds to each of Defendants' arguments. Plaintiff also appears to challenge his underlying convictions.

## V. PLAINTIFF'S MOTION FOR ORDER GRANTING TRIAL AMENDMENT

Plaintiff asserts he learned for the first time that TDCJ-CID maintained an altered copy of the final judgment entered in his criminal case when Defendants filed their Motion for Summary Judgment. Plaintiff moves the Court to dismiss without prejudice his supplemental state law claims asserted in paragraph 34 of Plaintiff's Second Amended Complaint. Plaintiff indicates those claims were directed at his unaltered original judgment. Plaintiff moves the Court to amend paragraph 34 of his Second Amended Complaint to retain the state causes of action with regard to the altered final judgment. Plaintiff's motion should be granted to the extent paragraph 34 of his Second Amended Complaint is construed as directed to the altered judgment.

# VI.   ANALYSIS

A.      Summary Judgment Standard

A court will, on a motion for summary judgment, render judgment if the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996); Int'l Shortstop, Inc. v. Rally Inc., 939 F.2d 1257, 1263 (5th Cir. 1991), cert. denied, 502 U.S. 1059, 112 S. Ct. 936 (1992). When a motion for summary judgment is made and supported, an adverse party may not rest upon mere allegations or denials but must set forth specific facts showing there is a genuine issue for trial. Ray v. Tandem Computers, Inc., 63 F.3d 429, 433 (5th Cir. 1995); FED. R. CIV. P. 56.[3]

Both movants and non-movants bear burdens of proof in the summary judgment process. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S. Ct. 2548 (1986). The movant with the burden of proof at trial must establish every essential element of its claim or affirmative defense. Id. at 322, 106 S. Ct. at 2552. In so doing, the moving party without the burden of proof need only point to the absence of evidence on an essential element of the non-movant's claims or affirmative defenses. Id. at 323-24, 106 S. Ct. at 2554. At that point, the burden shifts to the non-moving party to "produce evidence in support of its claims or affirmative defenses . . . designating specific facts showing that there is a genuine issue for trial." Id. at 324, 106 S. Ct. at 2553. The non-moving party must

---

[3]Effective December 1, 2010, Rule 56 was amended. Although there is a slight language change and a change in the designation of subsections, the legal standard remains the same. See FED. R. CIV. P. 56(a) (eff. Dec.1, 2010) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").

produce "specific facts" showing a genuine issue for trial, not mere general allegations.  <u>Tubacex v. M/V Risan</u>, 45 F.3d 951, 954 (5th Cir. 1995).

In deciding whether to grant summary judgment, the Court should view the evidence in the light most favorable to the party opposing summary judgment and indulge all reasonable inferences in favor of that party.  The Fifth Circuit has concluded "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the evidence before the court."  <u>James v. Sadler</u>, 909 F.2d 834, 837 (5th Cir. 1990) (citing <u>Matsushita</u>, 475 U.S. at 586, 106 S. Ct. 1356)).  To the extent facts are undisputed, a Court may resolve the case as a matter of law.  <u>Blackwell v. Barton</u>, 34 F.3d 298, 301 (5th Cir. 1994).

### B. <u>Absolute Immunity</u>

To the extent Plaintiff sues Defendant Owens in her individual capacity for monetary damages related to her involvement in the imposition of conditions upon Plaintiff's future release to parole, Defendant Owens is protected by absolute immunity.  <u>See</u> <u>Littles v. Board of Pardons and Paroles Div.</u>, 68 F.3d 122, 123 (5th Cir. 1995).  Parole officials are entitled to absolute immunity from liability for their conduct in parole decisions and in the exercise of their decision-making powers.  <u>Id.</u>

### C. <u>Qualified Immunity</u>

In addition, the doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982).  Immunity in this sense means immunity from suit, not

merely from liability. Jackson v. City of Beaumont, 958 F.2d 616 (5th Cir. 1992). "Qualified immunity is designed to shield from civil liability all but the plainly incompetent or those who violate the law." Brady v. Fort Bend County, 58 F.3d 173, 174 (5th Cir. 1995).

To rebut the qualified immunity defense, the plaintiff must show: (1) that he has alleged a violation of a clearly established constitutional right, and (2) that the defendants' conduct was objectively unreasonable in light of clearly established law at the time of the incident. Waltman v. Payne, 535 F.3d 342, 346 (5th Cir. 2008) (footnote omitted). To negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present "absolute proof," but must offer more than "mere allegations." Reese v. Anderson, 926 F.2d 494, 499 (5th Cir. 1991).

For several years, the Supreme Court required that the first of these criteria-whether plaintiffs' facts allege a constitutional violation-must be decided at the outset. Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001). Recently, however, the Court reversed course, holding that lower courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808 (2009).

Defendants are entitled to qualified immunity with respect to Plaintiff's claims brought against them in their individual capacities. Supervisory officials cannot be held vicariously liable in § 1983 cases solely on the basis of their employer-employee relationship. Monell v. Department of Social Services, 436 U.S. 658, 693, 98 S. Ct. 2018, 2037 (1978); Lozano v. Smith, 718 F.2d 756, 768 (5th Cir. 1983). If a supervisor is not personally involved in the alleged constitutional deprivation, he may be held liable only if there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations. Thompkins v. Belt, 828 F.2d 298,

303-04 (5th Cir. 1987). In order to demonstrate a causal connection, the supervisor would have to "implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." Id. at 304. Plaintiff has failed to provide a basis for holding Defendants liable for monetary damages in this case.

      D.     Eleventh Amendment Immunity

Because Plaintiff sues Defendants in their official capacities for monetary damages they are immune from suit under the Eleventh Amendment because such an action is the same as a suit against the sovereign. Pennhurst State School Hosp. v. Halderman, 465 U.S. 89, 104 S. Ct. 900 (1984). The Eleventh Amendment generally divests federal courts of jurisdiction to entertain suits directed against states. Port Auth. Trans-Hudson v. Feeney, 495 U.S. 299, 304, 110 S. Ct. 1868, 1871 (1990). The Eleventh Amendment may not be evaded by suing state agencies or state employees in their official capacity because such an indirect pleading remains in essence a claim upon the state treasury. Green v. State Bar of Texas, 27 F.3d 1083,1087 (1994).

However, the Eleventh Amendment does not apply to a request for a federal court to grant prospective injunctive relief against state officials on the basis of federal claims; thus, a request for prospective injunctive relief against state officials or employees in their official capacities falls within an exception to Eleventh Amendment immunity. See Ex parte Young, 209 U.S. 123, 149, 28 S. Ct. 441, 449-50 (1908). Thus, the Court addresses Plaintiff's claims for injunctive relief in the next section.

E.    Claims for Injunctive Relief

    1.    Conditions of Parole

Plaintiff complains his conditions of parole will require him to register as a sex offender (Condition M), participate in sex-offender therapy (Condition X), and undergo substance-abuse treatment or urinalysis monitoring (Conditions S and 0.13).  Although the Board of Pardons and Paroles on January 7, 2010, indicated such conditions would be imposed upon Plaintiff's future release on parole, the Board amended its decision on August 23, 2010, indicating no special conditions of parole would be imposed.  Accordingly, Plaintiff's claims are moot.  See Williams v. Ballard, 466 F.3d 330 (5th Cir. 2006) (mooting request for injunctive relief when Board of Pardons stated in the future it will not require prisoners without convictions for sex offenses to register under the SORA).

    2.    SOEP

        a.    Self-Incrimination

Plaintiff believes he will be required to admit his guilt to the offense he was convicted of when he participates in the SOEP.  Defendants move for summary judgment, asserting the SOEP does not compel prisoners to incriminate themselves in violation of the Constitution.

Defendants provide the Court with summary-judgment evidence that the SOEP does not require participants to admit guilt to their underlying sex offense.  See Def. MSJ at Affidavit of Joseph A. Bon-Jorno, Manger II for the Sex Offender Rehabilitation Programs.  According to Bon-Jorno, TDCJ-CID provides two programs:  (1) the SOEP; and (2) the SOTP.  Bon-Jorno attests participants in the SOEP are not required to admit guilt or discuss their underlying sex offense conviction.  On the other hand, Bon-Jorno asserts the SOTP requires the offender to accept

12

responsibility for his past behavior and acknowledge the need to change these behaviors. No contradicting evidence has been submitted by Plaintiff. Because Plaintiff is not required to incriminate himself in his SOEP, his claim is without merit.

### b. Due Process

Plaintiff complains he is required to complete the SOEP before being released on parole. He believes he should not be required to complete the SOEP because his criminal judgment states sex offender registration requirements do not apply to him.

Contrary to Plaintiff's arguments, his due-process rights have not been violated by requiring him to complete the SOEP. The Fifth Circuit has made it clear a parolee who has been previously convicted of a sex offense may be subject to labeling as a sex offender by Texas parole authorities without additional process being afforded. Jennings v. Owens, 602 F.3d 652 (5th Cir. 2010). As a convicted sex offender, Plaintiff received all the process to which he is due in the proceedings leading up to his conviction. Although the final judgment in Plaintiff's criminal case indicates sex offender registration requirements do not apply to him, this does not change the fact of his convictions for indecency with a child. As such, the sex offender label is not false, and Plaintiff had a full and fair opportunity to contest his convictions in those proceedings.

Likewise, requiring Plaintiff to participate in the SOEP does not violate a sex offender's "substantive" right to due process. The right to "substantive" due process is "protection from arbitrary government action," and "only the most egregious official conduct" is arbitrary in the constitutional sense. Coleman v. Dretke, 395 F.3d 216, 224 (5th Cir. 2005) (citing Sacramento v. Lewis, 523 U.S. 833, 846, 118 S. Ct. 1708 (1998)). In Coleman, the Court held that sex-offender treatment did not violate the defendant's "substantive" due process rights even when the treatment

included psychotherapy that "was mandated, confrontational, structured, victim centered, focused on behaviors, and confidentiality is not maintained." Id. While the Fifth Circuit held that such treatment was certainly intrusive, it found that the measures did not "shock the conscience," and was not "conduct intended to injure in some way unjustifiable by any government interest." Id. at 224-25. The SOEP is not nearly as intrusive as the SOTP. Accordingly, Defendants are entitled to summary judgment with respect to Plaintiff's due-process claims.

c.      Cruel and Unusual Punishment

To the extent Plaintiff contends the requirement of completing the SOEP prior to being released on parole delayed his release and constitutes cruel and unusual punishment his claim fails. The Eighth Amendment's Cruel and Unusual Punishment Clause protects those persons incarcerated "after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." Ingraham v. Wright, 430 U.S. 651, 671 n. 40, 97 S. Ct. 1401 (1977). "Not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny." Whitley v. Albers, 475 U.S. 312, 319, 106 S. Ct. 1078 (1986). After incarceration, only the infliction of unnecessary and wanton pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. Ingraham, 430 U.S. at 670. " To establish an Eighth Amendment claim, the prisoner must demonstrate, inter alia, an objective component of conditions so serious as to deprive him of the minimal measure of life's necessities, as when denied some basic human need." Berry v. Brady, 192 F.3d 504, 507 (5th Cir.1999) (citing Harper v. Showers, 174 F.3d 716, 720 (5th Cir. 1999)).

Requiring Plaintiff—a convicted sex offender—to complete the SOEP prior to his release on parole does not constitute cruel and unusual punishment. See e.g. Baumann v. Arizona Dep't of

_Corrections_, 754 F.2d 841, 846 (9th Cir. 1985) (holding that the disappointment experienced from the denial of early release "does not offend the standards of decency in modern society" and thus does not amount to an Eighth Amendment violation). The delay of parole is a disappointment rather than a punishment of cruel and unusual proportions. _See_ _also_ _Craft v. Texas Bd. of Pardons and Paroles_, 550 F.2d 1054 (5th Cir. 1977). Accordingly, the cruel and unusual punishment prohibition of the Eighth Amendment is not implicated by the delay of Plaintiff's parole or the SOEP he must complete.

### d. Equal Protection

Plaintiff summarily states the conditions of his release on parole "violate[ ] the equal treatment requirement of the U.S. Constitution." To the extent Plaintiff is attempting to raise an equal protection claim his claim fails. Plaintiff has not shown that sex offenders are a suspect class or that he has been denied a fundamental right. In addition, subjecting such offenders to different parole procedures is reasonably related to a legitimate penological interest. _See_ _Breshears v. Garrett_, No. 05-50064, 143 F. App'x 570 (5th Cir. 2005) (unpublished) (citing _Rublee v. Fleming_, 160 F.3d 213, 217 (5th Cir. 1998); _Finley v. Staton_, 542 F.2d 250 (5th Cir. 1976)). In addition, Plaintiff's conclusory assertions are insufficient to state an equal protection claim. _See_ _Brinkmann v. Johnston_, 793 F.2d 111, 113 (5th Cir.1986).

### 4. Transfer to TDCJ-CID

Plaintiff complains he was transferred to TDCJ-CID after he filed his direct appeal and was not allowed to remain in the Harris County Jail pending his appeal. Plaintiff contends this violates Article 42.09 of the Texas Code of Criminal Procedure and violated his procedural due-process rights. Article 42.09 of the Texas Code of Criminal Procedure provides:

Section. 4. If a defendant is convicted of a felony, is eligible for release on bail pending appeal under article 44.04(b), and gives notice of appeal, he shall be transferred to the Institutional Division of the Texas Department of Criminal Justice on a commitment pending a mandate from the Court of Appeals or the Court of Criminal Appeals upon request in open court or upon written request to the sentencing court. Upon a valid transfer to the institutional division under this section, the defendant may not thereafter be released on bail pending his appeal.

If an offender is transferred to TDCJ in order to begin serving his sentence following his conviction and sentence, and the sentence is less than ten years and the offender did not request or consent to transfer, he is entitled to be returned to county jail to await disposition of his appeal to the Texas Court of Criminal Appeals. See Ex parte Rodriguez, 597 S.W.2d 771 (Tex. Crim. App. 1980) (citing Tex. Code Crim. Proc. ann. art. 42.09 § 5). However, a plaintiff has no cause of action for damages if he is prematurely transferred to TDCJ-CID. Brown v. Lynaugh, 817 S.W.2d 813 (Tex. App.– Houston [1st Dist.] 1991, no writ). The proper vehicle for seeking relief is a state application for habeas corpus relief. Ex parte Norvell, 528 S.W.2d 129 (Tex. Crim. App. 1975). Assuming without deciding Plaintiff was prematurely transferred to TDCJ-CID, he has no right to be returned to county jail, as there is currently no state direct appeal pending. Accordingly, his claim is moot. Morever, Plaintiff's due process rights were not violated, as he could have requested a return to county jail via a state application for habeas corpus relief.

5.    Sex Offender Registration

Plaintiff complains the DPS insists he register as a sex offender when he is released to parole. In addition, Plaintiff complains his driver's license was wrongfully revoked because of the sex-offender registration requirements. As mentioned above, the DPS relies upon the 2002 order deferring adjudication for its authority to impose sex-offender registration and is of the opinion the

2008 Judgment, containing the statement that "Sex Offender Registration Requirements do not apply," is irrelevant.

The Texas sex offender registration statute was originally enacted in 1991. See Act of June 15, 1991, 72nd Leg., R.S., ch. 572, 2029 Tex. Gen. Laws 2029-32, eff. Sept. 1, 1991 (codified at Tex. Rev. Civ. Stat. Ann. art. 6252-13c.1). The current Texas Sex Offender Registration Program is codified at Chapter 62 of the Texas Code of Criminal Procedure. See Acts 2005, 79th Leg., ch. 1008, § 1.01, eff. Sept. 1, 2005 (amending and re-codifying the Sex Offender Registration Program within Chapter 62). Prior to 1997, the sex offender registration requirement applied only to those persons convicted of a sex offense after 1991. See Rodriguez v. State, 93 S.W.3d 60, 66 (Tex. Crim. App. 2002). In 1997, however, the Texas legislature expanded the class of persons required to register to apply to those individuals who had a "reportable conviction or adjudication" occurring on or after September 1, 1970. See Act of June 1, 1997, 75th Leg., R.S., ch. 668 §§ 1, 11, 1997 Tex. Gen. Laws 2260-61, 2264 (currently Tex. Code Crim. Proc. art. 62.002). A "reportable conviction or adjudication" includes a deferred adjudication for indecency with a child under § 21.11 of the Texas Penal Code, the offense of which Plaintiff was convicted. See Tex. Code Crim. Proc. Ann. art. 62.001(5)(A). The 1997 amendments also imposed lifetime reporting requirements for certain offenses, including a "sexually violent offense." See Act of June 1, 1997, 75th Leg., R.S., ch. 668 §§ 1, 11, 1997 Tex. Gen. Laws 2253, 2264 (currently at Tex. Code Crim. Proc. Ann. art. 62.101(a)(1)). Indecency with a child by contact under § 21.11(a)(1) of the Texas Penal Code is defined as a "sexually violent offense." See Tex. Code Crim. Proc. Ann. art. 62.001(6)(A).

Judgments in cases involving Chapter 62 (sex offender registration) are required to contain the age of the victim and a statement that sex offender registration applies to the defendant. See

TEX. CODE CRIM. PROC. ANN. art. 42.01 § 1(27). In Plaintiff's case, the 230th Judicial District Court of Harris County clearly made a clerical error in its 2008 Judgment when the court erroneously stated "Sex Offender Registration Requirements do not apply to Defendant." Pursuant to the Texas Sex Offender Registration Program, Plaintiff was required to register for life, because he had received deferred adjudication in 2002 for the offense of indecency with a child by contact.[4] The trial court did not have the discretion to remove Plaintiff from the Sex Offender Registration Program, because Plaintiff's conviction or adjudication had not been set aside on appeal by a court and Plaintiff had not received a pardon on the basis of subsequent proof of innocence. See TEX. CODE CRIM. PROC. ANN. art. 62.002(c). In addition, Plaintiff's statutory duty to register had not been terminated early pursuant to Subchapter I of Chapter 62. See TEX. CODE CRIM. PROC. ANN. art. 62.401-62.408.

A clerical error in the judgment does not abrogate Plaintiff's statutory duty to register as a sex offender. Plaintiff's duty to register is based on his conviction for Indecency with a child by contact and nothing in the record validly removes Plaintiff from the Sex Offender Registration Program. When Texas appellate courts have been presented with judgments containing the same error as presented in Plaintiff's case, the courts have simply modified the judgments to reflect that sex offender registration requirements do apply and add the age of the victim. See Morales v. State, No. 05-09-01286-CR, 2010 WL 2613971 (Tex. App. – Dallas 2010); Williams v. State, No. 05-07-00807-CR, 2008 WL 5276796 (Tex. App. – Dallas 2008); Rocker v. State, No. 05-07-01364, 2008 WL 5147076 (Tex. App. – Dallas 2008).

---

[4] At the time Plaintiff was placed on deferred adjudication, he was admonished he would be required to register as a sex offender for the rest of his life because he had been placed on deferred adjudication for a reportable offense.

To the extent Plaintiff is arguing his substantive due process rights will be violated if the DPS requires him to register as a sex offender his claim fails. As mentioned above, the right to "substantive" due process is "protection from arbitrary government action," and "only the most egregious official conduct" is arbitrary in the constitutional sense. Coleman v. Dretke, 395 F.3d 216, 224 (5th Cir. 2005) (citing Sacramento v. Lewis, 523 U.S. 833, 846, 118 S. Ct. 1708 (1998)). Plaintiff fails to demonstrate any arbitrary government action has been taken with regard to the requirement that Plaintiff register as a sex offender. To the extent Plaintiff raises this claim under a different theory of liability his claim similarly fails. In this case the DPS is properly requiring Plaintiff to register as a sex offender, because Plaintiff has a statutory duty to register based on his reportable conviction of indecency with a child by contact.[5]

F.     Heck v. Humphrey

In his Second Amended Complaint Plaintiff maintains there is no indictment in his criminal case containing the elements of the labeled conviction of indecency with a child, because the trial court amended the indictment to say "cause contact" instead of "cause sexual contact." Plaintiff raised this same issue in an application for habeas corpus relief he filed in this cause on October 15, 2010, nearly ten months after he filed his original civil rights complaint. On March 15, 2011, the District Court severed the habeas corpus application from this cause, directed the Clerk of the Court to open a new habeas corpus case, and transferred the new case to the Houston Division of the Southern District of Texas. Petitioner's habeas case is currently pending in the Houston court. See Wilson v. Thaler, No. 4:11-CV-1613 (S.D. Tex.). Although Plaintiff's argument are difficult to

---

[5] As Plaintiff is required by statute to register as a sex offender, his driver's licence was properly revoked.

decipher, he also appears to raise additional challenges to his convictions in his motions and responses. However, Plaintiff is barred from challenging his state court convictions in this § 1983 action by Heck v. Humphrey, 512 U.S. 477, 486-87, 114 S. Ct. 2364, 2372 (1994) and the Fifth Circuit's application of Heck to state prisoner § 1983 lawsuits in Boyd v. Biggers, 31 F.3d 279 (5th Cir. 1994).

G.      State-Law Claims

Plaintiff raises several state-law claims. Specifically, he states Defendants are liable for "negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, false imprisonment, wrongful prosecution, and abrogation of a final judgment."

Plaintiff's claims are asserted in a conclusory fashion without any supporting factual allegations that show Plaintiff is entitled to relief or that Defendants were personally involved with Plaintiff's alleged state-law claims. It is long-established that to withstand a properly supported motion for summary judgment, the nonmoving party must come forward with evidence to support the essential elements of its claim on which it bears the burden of proof at trial.

> [T]he nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 325, 106 S. Ct. at 2553-54. This burden is not satisfied with "some metaphysical doubt as to the material facts," Matsushita, 475 U.S. at 586, 106 S. Ct. at 1356, by "conclusory allegations," Lujan, 497 U.S. at 871-73, 110 S. Ct. at 3180, by "unsubstantiated assertions," Hopper v. Frank, 16 F.3d 92 (5th Cir.1994), or by only a "scintilla" of evidence, Davis v. Chevron U.S.A., Inc., 14 F.3d 1082 (5th Cir.1994).

Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994); see also FED. R. CIV. P. 56(c), (e) (requiring that in order to show a material factual dispute and avoid summary judgment, a party must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically

stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials").

Under Texas law, a malicious prosecution claim requires a plaintiff to satisfy the following elements: (1) the commencement of a criminal prosecution; (2) initiation of the criminal prosecution by the defendant; (3) termination of the prosecution in the plaintiff's favor; (4) innocence of the plaintiff; (5) lack of probable cause to initiate the prosecution; (6) malice in filing the charge; and (7) damages. Kroger Tex. Ltd. P'ship v. Suberu, 216 S.W.3d 788, 793 n. 3 (Tex. 2006). As explained by Defendants, they did not commence a criminal prosecution against Plaintiff.

The elements of false imprisonment are: (1) willful detention, (2) without consent, and (3) without authority of law. Wal-Mart Stores, Inc. v. Rodriguez, 92 S.W.3d 502, 506 (Tex. 2002). As Plaintiff's incarceration was under the authority of the Judgment Adjudicating Guilt entered on October 17, 2008, Plaintiff has also failed to carry his burden on his claim for false imprisonment.

To recover for intentional infliction of emotional distress, Plaintiff must prove that: (1) the defendants acted intentionally or recklessly; (2) the defendants' conduct was extreme and outrageous; (3) the defendants' actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. See Hoffmann-La Roche Inc. v. Zeltwanger, 144 S.W.3d 438, 445 (Tex. 2004). Plaintiff again fails to demonstrate material fact disputes on the essential elements, as there is no evidence the defendants were personally involved.

Defendants contend Plaintiff's negligence claims fall within the requisites of the Texas Tort Claims Act ("TCCA"). See Tex. Civ. Prac. & Rem. Code § 101.001 (Vernon 2011). Pursuant to Section 101.106(f) of the TTCA, immunity is provided to the employee of a governmental unit by requiring either the substitution of the governmental entity for the employee or the dismissal of the

plaintiff's claims against the employee when the suit is based on conduct within the general scope of that employee's employment and could have been brought under the TTCA against the governmental unit. Section 101.106(f) specifically provides:

> On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

Although counsel for Defendants indicates a motion to dismiss has been filed separately with regard to this provision of the TTCA, no such motion was ever filed.

In order to avoid any further delay in this case, the Court will simply address Plaintiff's negligence claims. In Texas, there is no general legal duty to avoid negligently inflicting mental anguish. Boyles v. Kerr, 855 S.W.2d 593, 594 (Tex.1993). In addition, Plaintiff must demonstrate each of the elements of negligence, that is, duty, breach, proximate cause and damages. See Doe v. Boys Clubs of Greater Dallas, Inc., 907 S.W.2d 472, 477 (Tex. 1995). Plaintiff does not identify the underlying duty owed to him let alone demonstrate material fact disputes on the essential elements of his negligence claim. Accordingly, Plaintiff's claims do not withstand summary judgment.

Alternatively, the District Court may decline to exercise supplemental jurisdiction over Plaintiff's state-law claims. Pursuant to 28 U.S.C. § 1367, a district court generally has supplemental jurisdiction over claims that are so related to claims in the action over which it has original jurisdiction that they form part of the same case or controversy. However, a district court may decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it has original jurisdiction. Because summary judgment is recommended with regard to

all of Plaintiff's federal claims, the District Court may decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

## VII. RECOMMENDATION

The undersigned recommends that the District Court **GRANT** Defendants' Motion for Summary Judgment [#60], **DISMISS** Defendants' Motion for Judgment on the Pleadings [#51], **DENY** Plaintiff's Motion for Partial Summary Judgment [#45], **DENY** Plaintiff's Supplemental Motion for Partial Summary Judgment [#54], **GRANT** Plaintiff's Motion for Order Granting Trial Amendment [#62] to the extent paragraph 34 of his Second Amended Complaint is construed as directed to the altered state court judgment, and **DENY** Plaintiff's Motion for Judgment on the Pleadings [#80].

## VIII. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. Battles v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within 14 days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140, 150-153, 106 S. Ct. 466, 472-74 (1985); Douglass v. United Servs. Auto. Assoc., 79 F.3d 1415, 1428-29 (5th Cir. en banc, 1996).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 29th day of June, 2011.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE